UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| NEYSA QUINN,<br><br>      *Plaintiff,*<br>v.<br><br>GEORGIA POWER COMPANY,<br><br>      *Defendant.* | Civil Action No. 5:23-cv-00177 |

## NOTICE OF REMOVAL

Defendant Georgia Power Company ("Georgia Power") files this Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, and 42 U.S.C. §§ 2210(n)(2), to remove this case from the Superior Court of Monroe County, Case No. 2023-SU-CV-0177 (the "State Court Action") to the United States District Court for the Middle District of Georgia.

### I.  PROCEDURE AND TIMELINESS OF REMOVAL

1. On May 12, 2023, Plaintiff Neysa Quinn filed the State Court Action.

2. On May 12, 2023, approximately an hour after filing the State Court Action, Plaintiff filed a First Amended Complaint.

3. Counsel for Georgia Power accepted service on behalf of Georgia Power on May 16, 2023. Removal is therefore timely under 28 U.S.C. § 1446(b)(1) because Georgia Power filed this notice of removal within 30 days of service.

4. Pursuant to 28 U.S.C. § 1446(a), true and legible copies of all pleadings and papers on file in the State Court Action are attached as **Exhibits A through J**. They include Plaintiff's Complaint, First Amended Complaint, and case initiation form, service documents, and a stipulation extending the time for Georgia Power to answer or otherwise respond to the First Amended Complaint. Georgia Power has not yet filed a responsive pleading in the State Court

Action. Georgia Power is also not aware of any pending motions or briefs in the State Court Action as of the time of filing the instant Notice of Removal.

5.   Pursuant to 28 U.S.C. § 1446(d), Georgia Power is serving written notice of removal of this action on Plaintiff's counsel. A copy of that notice, attached as **Exhibit K**, will be promptly filed with the Clerk of the Superior Court of Monroe County.

6.   Based on the foregoing, the procedural requirements for removal set forth in § 1446 are satisfied.

7.   Jurisdiction is proper in this Court, as further explained below, under the Price-Anderson Amendments Act of 1988. *See* 42 U.S.C. § 2210(n)(2).

8.   Venue is proper under the Price-Anderson Amendments Act because this Court is the United States District Court for the district in which the alleged nuclear incidents took place. *See id.*

**II.   GROUNDS FOR REMOVAL**

   **a.   Background**

9.   Georgia Power is an electric utility servicing residents across the State of Georgia. It operates power generating facilities across the state, including solar, hydroelectric, nuclear, coal, and natural gas plants.[1]

10.   Georgia Power's Plant Scherer in Monroe County, Georgia is a coal-fired power plant that began operating in 1982. *See* First Amended Complaint ("FAC") ¶¶ 12, 16.

11.   As a coal-fired power plant, Georgia Power's Plant Scherer is subject to rigorous environmental, safety, and financial oversight from federal and state regulators, including but not limited to the United States Environmental Protection Agency, the Federal Energy Regulatory

---

[1] *See* http://www.georgiapower.com/company/energy-industry/generating-plants.html

Commission, the Georgia Department of Natural Resources, the Occupational Safety and Health Administration, and the Georgia Public Service Commission.

12. At Plant Scherer, coal is combusted to generate heat, which generates steam to turn turbines, which, in turn, generate electric power. *See* FAC ¶ 19. Access to water (to produce steam) is therefore critical to the operation of Plant Scherer, as it is for any thermal power plant. Therefore, Georgia Power constructed Lake Juliette to ensure an adequate supply of water for electricity generation at Plant Scherer without overburdening the nearby Ocmulgee River. *See id*. at ¶¶ 13, 19.

13. The coal combustion process also generates residual material known as coal combustion residuals ("CCR"). Like many other coal-fired power plants, Georgia Power's Plant Scherer has stored some CCR onsite in a regulated impoundment. 40 C.F.R. Part 257, Subpart D ("CCR Rule"); Georgia Comp. R. & Regs. r. 391-3-4-.10.

      **b.**     **Plaintiff's claims**

14. Notwithstanding Georgia Power's forty years of safe operation of Plant Scherer, Lake Juliette, and the Plant Scherer CCR impoundment, Plaintiff has filed the State Court Action in which she alleges that she has been injured and her property has been damaged as a result of Georgia Power's construction of Lake Juliette and operation of Plant Scherer. FAC ¶ 59.

15. Plaintiff alleges that at Plant Scherer, Georgia Power uses coal containing toxic elements as fuel and that CCR produced at Plant Scherer contains "materials" that are known carcinogens and neurotoxins. FAC ¶¶ 23-24. Plaintiff alleges that Plant Scherer's operations have released those constituents to which Plaintiff was exposed. FAC ¶¶ 46, 48, 52-53.

16. Plaintiff further alleges that the creation of Lake Juliette disrupted the pH of the local groundwater, which she alleges, has increased the solubility of naturally occurring uranium in an underground mylonite deposit in the area. FAC ¶¶ 36-45, 50-51. Plaintiff alleges that this

exposed her to uranium in her drinking water and has also caused uranium contamination on her property. *Id.* ¶ 50-52, 56.

17. Plaintiff further alleges that CCR toxins have leached into the groundwater from the CCR impoundment. FAC ¶¶ 29-31, 46-47, 50. Plaintiff alleges that CCR constituents that have leached into groundwater from Georgia Power's operations at Plant Scherer migrated onto and contaminated the property where Plaintiff lives, and exposed Plaintiff to "toxins from the coal ash" in her drinking water. *Id.* ¶ 31; *see id.* ¶¶ 46-47, 49-50, 51-52.

18. In her First Amended Complaint, Plaintiff asserts four substantive causes of action against Georgia Power: negligence, negligent failure to warn, nuisance, and trespass. Each of those claims arises from Plaintiff's allegations that Georgia Power's creation of Lake Juliette and operation of Plant Scherer contaminated the property where Plaintiff lived and exposed Plaintiff to "toxic and hazardous" contaminants allegedly released from the environment, as air emissions, and as leachate from the CCR impoundment. *See* FAC ¶¶ 63-126.

    **c. The Price-Anderson Amendments Act of 1988**

19. This Court has original jurisdiction over this matter pursuant to the Atomic Energy Act of 1954, 42 U.S.C. § 2201, *et seq.*, and its amendments, including the Price-Anderson Amendments Act of 1988, Pub. L. No. 100-408, 102 Stat. 1066 (1988).

20. The Price-Anderson Amendments Act of 1988 provides in relevant part:

> With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place . . . shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon motion of the defendant . . . any such action pending in any State court . . . shall be removed or transferred to the United States district court having venue under this subsection. . . . In any action that is or becomes removable pursuant to this paragraph, a petition for removal shall be filed within the period provided in section 1446 of title 28, United States Code, or within the 30-day period beginning on . . . August 20, 1988, whichever occurs later.

4

42 U.S.C. § 2210(n)(2).

21. A "public liability action," as used in § 2210(n)(2) means "any suit asserting public liability." *Id.* § 2014(hh).

22. "Public liability," means "any legal liability arising out of or resulting from a nuclear incident." *Id.* § 2014(w).

23. "Nuclear incident" is defined as "any occurrence . . . within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." *Id.* § 2014(q).

24. The term "source material" refers to "uranium, thorium, or any other material which is determined by the [Nuclear Regulatory] Commission pursuant to the provisions of section 2091 of this title to be source material." *Id.* § 2014(z)(1). The Nuclear Regulatory Commission has determined that source material includes uranium "in any physical or chemical form." 10 C.F.R. § 40.4.

25. Thus, generally, § 2210(n)(2) applies to any suit asserting personal injury or property damage arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of uranium, thorium, and other source materials. *See Pinares v. United Techs. Corp.*, 973 F.3d 1254, 1261 (11th Cir. 2020). This includes claims arising from exposure to "natural uranium . . . and its progeny," such as its "radioactive daughters . . . Thorium, Radium, and Radon." *Cano v. Everest Minerals Corp.*, 362 F. Supp. 2d 814, 816 n.3, 817 (W.D. Tex. 2005); *see also* 10 C.F.R. § 40.4 (defining source material as uranium "in any physical or chemical form"). The United States Supreme Court has explained the jurisdictional impact of the Price-Anderson Act of 1988 on state law claims as follows:

> [T]he Price-Anderson Act transforms into a federal action, "any public liability action arising out of or resulting from a nuclear [incident]," § 2210(n)(2). The Act not only gives a district court original jurisdiction over such a claim, but provides for removal to a federal court as of right if a putative Price-Anderson action is brought in a state court.

*El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 (1999) (citations omitted). The Eleventh Circuit has stated that, after the Price-Anderson Amendments Act of 1988, "a public liability action can never be 'brought under State law.'" *Pinares*, 973 F.3d at 1261.

26. Furthermore, the Eleventh Circuit has "unambiguously interpreted [the Price-Anderson Act] as creating an ***exclusive*** federal cause of action for nuclear incidents." *Id.* at 1260 (emphasis added); *accord Hand v. Cargill Fertilizer, Inc.*, 157 F. App'x 230, 233 (11th Cir. 2005) ("The federal courts have exclusive jurisdiction over actions arising under the Price-Anderson Act.").

### d. Plaintiff's claims arise under the Price-Anderson Amendments Act of 1988 and therefore must be adjudicated in this Court.

27. Georgia Power disputes the allegations in Plaintiff's First Amended Complaint, including but not limited to the allegations that Georgia Power's construction of Lake Juliette and its operations at Plant Scherer caused her personal injury. Nonetheless, Plaintiff claims that her personal injuries and property damage has been caused by the radioactive, toxic, or other hazardous properties of uranium—which is defined as a source material for purposes of the Price-Anderson Amendments Act. *See* 42 U.S.C. § 2014(z)(1); 10 C.F.R. § 40.4. Plaintiff's claims therefore arise from an alleged "nuclear incident" and constitute a public liability action. 42 U.S.C. § 2014(q), (w), (hh).

28. Specifically, Plaintiff claims that her personal injuries were caused by exposure to uranium, radium, radon, gross alpha, and gross beta. FAC ¶¶ 60-62.

6

29.     Uranium and thorium are radioactive, unstable elements. As they decay, they emit radiation, including radiation in the form of alpha and beta particles. Uranium and thorium decay also produces radioactive decay products, including radium and radon. *See* **Exhibit L**, Georgia Department of Public Health, Health Consultation: Naturally-Occurring Uranium in Private Water Wells, Juliette, Monroe County, Georgia, at p. 4 and App'x A (radioactive decay chain).[2]

30.     For instance, as a uranium-238 atom (the most abundant isotope of uranium) begins the first step in its decay chain, its nucleus emits an alpha particle.[3]

31.     For purposes of the Price Anderson Act, alpha radiation is just one of the "radioactive, toxic . . . or other hazardous" properties of uranium and its decay products. 42 U.S.C. § 2014(q). *See also Cano*, 362 F. Supp. 2d at 816 & n.3, 817 (PAA case in which plaintiffs were allegedly exposed to uranium and the daughter products in its decay chain).

32.     Also, uranium and thorium's decay chain products include some or all of the parent radionuclides and associated decay products that Plaintiff claims caused her personal injuries: gross alpha, gross beta, radium, and radon. FAC ¶ 62. Thus, in addition to Plaintiffs' claims about uranium exposure, her claims about the radionuclides in uranium's and thorium's decay chains are also claims about the radioactive, toxic . . . or other hazardous" properties of source material. 42 U.S.C. § 2014(q); *see also Cano*, 362 F. Supp. 2d at 816 & n.3, 817.

---

[2] *See also, e.g.*, ATSDR, Radium Tox FAQs, https://www.atsdr.cdc.gov/toxfaqs/tfacts144.pdf; ATSDR, Toxicological Profile of Radon, https://www.atsdr.cdc.gov/ToxProfiles/tp145.pdf; EPA, Radionuclide Basics: Uranium, https://www.epa.gov/radiation/radionuclide-basics-uranium; EPA, Radionuclide Basics: Thorium, https://www.epa.gov/radiation/radionuclide-basics-thorium; EPA, Radionuclide Basics: Radium: https://www.epa.gov/radiation/radionuclide-basics-radium; EPA, Radionuclide Basics: Radon, https://www.epa.gov/radiation/radionuclide-basics-radon (radon "comes from the natural decay of uranium and radium found in nearly all rocks and soils.").

[3] Uranium-238 daughters radium-226 and radon-222 are also considered "alpha emitters." Naturally-occurring uranium-238 and its daughters are associated with the presence of gross alpha in groundwater. *See, e.g.*, University of Georgia Extension, Your Household Water Quality: Radon in Your Water, https://secure.caes.uga.edu/extension/publications/files/pdf/C%20858-16_4.PDF.

33. Although a plaintiff is generally the master of his complaint, the question of removal does not depend wholly on the face of the complaint. Instead, "a court is entitled to look beyond the wording of the complaint to determine if it has been artfully pleaded to avoid federal jurisdiction." *Wilkinson v. Ga. Power Co.*, Civ. No. 90-120-ALB/AMER(DF), 1992 U.S. Dist. LEXIS 12704, at *4 (M.D. Ga. May 28, 1992) (internal citations omitted). "In sum, the existence of a federal question depends on the **real nature** of the plaintiff's claim regardless of how it is characterized." *Id*. (emphasis added); *see also, e.g.*, *AFLAC, Inc. v. Bloom*, 948 F. Supp. 2d 1374, 1376 (M.D. Ga. 2013) (explaining that federal preemption of a field of law is an exception to the well-pleaded complaint rule).

34. Because cases alleging personal injury and property damage stemming from exposure to uranium and radionuclides fall under the exclusive jurisdiction of the federal court, the "real nature" of Plaintiff's First Amended Complaint, however artfully pled, mandates that this case be heard in federal court. That is, the "real nature" of Plaintiff's First Amended Complaint is that the alleged personal injury and property damage relates to the radioactive, hazardous, or toxic properties of uranium or thorium.

35. The "real nature" of Plaintiff's First Amended Complaint is further confirmed by several prior, substantially similar filings against Georgia Power, brought by substantially the same attorneys which indicate that this case is, at its core, about exposure to uranium and other radionuclides.

### e. Related lawsuits confirm that Plaintiff's case is about exposure to uranium and other radionuclides.

36. In 2020, substantially the same attorneys filed a complaint against Georgia Power in the case *Arwood et. al. v. Georgia Power*, Fulton Cty. Sup. Ct. Case No. 2020CV338805,[4] alleging personal injury and property damage arising from the alleged constituents of CCR, including uranium. *See* Complaint in *Arwood*, ¶¶ 3, 67, 89, 137-38, 150-51, 153-54, 181, 183, attached hereto as **Exhibit M**.

37. As early as 2020, Plaintiffs in the *Arwood* action began conducting sampling on their properties for uranium, thorium, radionuclides, and other constituents of coal ash. The *Arwood* plaintiffs rely on that testing to substantiate their claims, which are substantially similar to the instant lawsuit, that allege uranium and other radionuclides have migrated onto their properties. *See* **Exhibit N**. The *Arwood* plaintiffs' discovery also included an inspection and sampling event at Plant Scherer in May and June 2022. *See* **Exhibit O**. During that weeks' long inspection, the *Arwood* plaintiffs collected numerous water samples, which they analyzed for dozens of radioactive constituents, including uranium, thorium, radium-226, radium-228, and gross alpha and gross beta radiation.

38. Moreover, seven additional lawsuits against Georgia Power by other Monroe County residents were previously brought by the same attorneys and allege personal injury and property damage allegedly due to exposure to Georgia Power's operations at Plant Scherer, which

---

[4] On December 9, 2022, after the state court requested proposed orders on the Price Anderson Act motion and a separate motion to transfer venue, Plaintiffs in *Arwood* amended their complaint. The case was ordered to be transferred from Fulton County to Monroe County on December 29, 2022 and it is now proceeding in Monroe County, Case No. 2023-SU-CV-0029. The Monroe County Superior Court's denial of Georgia Power's Motion to Dismiss for Lack of Subject Matter Jurisdiction, which was based on the Price Anderson Act, has been certified for immediate review and Georgia Power will file its application for interlocutory appellate review on May 22, 2023. Georgia Power will keep the Court apprised as the appellate process moves forward in the State of Georgia appellate courts.

allegedly exposed Plaintiffs to uranium, radionuclides, and other constituents. *See Cansler et. al v. Georgia Power*, M.D. Ga. Case No. 5:21-cv-00401-TES, Monroe Cty. Sup. Ct. Case No. SUCV2021000407; *Bowdoin et. al v. Georgia Power Company*, M.D. Ga. Case No. 5:21-cv-00402-TES, Monroe Cty. Sup. Ct. Case No. SUCV2021000408 Complaint; *Fleming et al. v. Georgia Power Company*, M.D. Ga. Case No. 5:22-cv-00101-TES, Monroe Cty. Sup. Ct. Case No. SUCV2022000054; *Stowe v. Georgia Power Company*, M.D. Ga. Case No. 5:22-cv-00103-TES, Monroe Cty. Sup. Ct. Case No. SUCV2022000056; *Sands v. Georgia Power Company*, M.D. Ga. Case No. 5:22-cv-00104-TES, Monroe Cty. Sup. Ct. Case No. SUCV2022000057; *Cass v. Georgia Power Company*, M.D. Case No. 5:22-cv-00102-TES, Monroe Cty. Sup. Ct. Case No. SUCV2022000055; *Carter v. Georgia Power Company*, M.D. Ga. Case No. 5:23-cv-00021-TES, Monroe Cty. Sup. Ct. Case No. 2023-SU-CV-0006.

39. Georgia Power removed *Cansler*, *Bowdoin*, and the original *Quinn v. Georgia Power Company*, M.D. Ga. Case No. 5:21-cv-00403-TES*,* Monroe Cty. Sup. Ct. Case No. SUCV2021000409 Complaint to this Court under the Price-Anderson Amendments Act of 1988 and 28 U.S.C. § 1331 on November 11, 2021. A hearing on removal was held in front of the Honorable Tilman E. Self on February 16, 2022.

40. Prior to the February 16, 2022 hearing, four additional cases were filed: *Fleming*, *Stowe, Sands,* and *Cass*. Seeking to avoid federal jurisdiction, mentions of exposure to uranium and radionuclides were removed from the complaints, instead recharacterizing the exact same allegations as exposure to "toxic" materials and contaminants. On March 9, 2022, Georgia Power removed those cases under the Price-Anderson Amendments Act of 1988 and 28 U.S.C. § 1331.

41. All cases other than *Arwood* were voluntarily dismissed November 16, 2022.

42. On January 9, 2023, *Carter* was filed, and, seeking to avoid federal jurisdiction, the case explicitly disclaimed injury from the result of exposure to uranium or thorium.

43. *Carter* was voluntarily dismissed on February 21, 2023.

44. On May 12, 2023, Plaintiff, along with the other plaintiffs whose actions were voluntarily dismissed, filed new complaints in Monroe County Superior Court, citing Georgia's renewal statute. O.C.G.A. § 9-2-61.

45. Plaintiff purports to bring her claims under state law, but because her claims are within the scope of the Price-Anderson Act of 1988, those claims can ***only*** arise under federal law. *See Pinares*, 973 F.3d at 1259.

46. A civil action filed in state court may be removed to federal court if the claim arises under federal law, looking to the well-pleaded allegations in the complaint. Further, federal question jurisdiction arises—even when a complaint facially asserts only state law claims—where Congress has expressly provided for the removal of such action. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("[A] state claim may be removed to federal court . . . when Congress expressly so provides, such as in the Price-Anderson Act . . . .").

47. Accordingly, there is original federal jurisdiction over Plaintiff's claims, and this action is removable under § 2210(n)(2). *See, e.g.*, *Cotromano v. United Techs. Corp.*, 7 F. Supp. 3d 1253, 1257 (S.D. Fla. 2014) (finding removal proper under the Price-Anderson Act where plaintiffs raised state law negligence, trespass, and strict liability claims for personal injury, allegedly caused by uranium and thorium contamination).[5]

---

[5] Georgia Power asserts that all of Plaintiff's claims are removable under § 2210(n)(2), but to the extent any claims are considered not removable based on original jurisdiction, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining claims because all of Plaintiff's claims form part of the same case or controversy.

### III.     CONCLUSION

For the foregoing reasons, Georgia Power hereby removes this action to this Court under the Price-Anderson Amendments Act of 1988 and under 28 U.S.C. § 1331.

Respectfully submitted this 18th day of May, 2023.

          ALSTON & BIRD, LLP

          */s/ Meaghan G. Boyd*
          Meaghan G. Boyd
          Georgia Bar Number 142521
          Meaghan.boyd@alston.com
          Douglas S. Arnold
          Georgia Bar Number 023208
          Doug.arnold@alston.com
          Jenny A. Hergenrother
          Georgia Bar Number 447183
          jenny.hergenrother@alston.com
          Lee Ann Anand
          Georgia Bar Number 004922
          leeann.anand@alston.com
          Sara M. Warren
          Georgia Bar Number 966948
          sara.warren@alston.com
          Vickie Chung Rusek
          Georgia Bar Number 487697
          vickie.rusek@alston.com

          One Atlantic Center
          1201 West Peachtree St.
          Atlanta, Georgia 30309-3424
          Tel: 404-881-7000

          JAMES BATES BRANNAN
          GROOVER LLP

          Duke R. Groover
          Georgia Bar Number 313225
          dgroover@jamesbatesllp.com

          P.O. Box 4283
          Macon, Georgia 31208-4283
          Tel.: 478-742-4280

ROBBINS ALLOY BELINFANTE
LITTLEFIELD LLC

Richard Robbins
Georgia Bar 608030
rrobbins@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com

500 14th Street, NW
Atlanta, Georgia 30318
Tel: 678-701-9381


*Attorneys for Defendant Georgia Power Company*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **NOTICE OF REMOVAL** and its exhibits by mailing the same to counsel for Plaintiff, pursuant to Fed. R. Civ. P. 5(b):

**STACEY EVANS LAW**
Stacey Godfrey Evans
Tiffany Watkins
John Amble Johnson
4200 Northside Parkway, NW
Bldg One; Suite 200
Atlanta, Georgia 30327

**CONLEY GRIGGS PARTIN LLP**
Cale H. Conley
4200 Northside Parkway, N.W.
Building One, Suite 300
Atlanta, Georgia 30327

**ADAMS LAW FIRM**
Brian P. Adams
Mary Beth Hand
598 D.T. Walton Sr. Way
Macon, Georgia 31201

This 18th day of May, 2023.

*/s/ Meaghan G. Boyd*
Meaghan G. Boyd